This case exemplifies what happens when a municipality abuses the legal process to take property it can neither afford, nor under the controlling eminent domain statutes, for a public purpose. There is a legal way to obtain individuals' property for public purposes if you're operating a governmental function. That was not done here. Instead, the City of Houston stepped into the shoes of a private entity, Ella Park Terrace, and intervened in a dispute between neighbors that would have been a dispute between neighbors but for the City of Houston's involvement. While it is true that they weren't a party to the suit, they were the attorney for Ella Park. They presented the case to City Council. They made a decision to use their police powers to assist Ella Park in suing Mr. Gallegos for damages that they had actually caused. This is a pleadings case. This is a 12 v. 6 case. We have to look at the pleadings and whether the pleadings are sufficient to allege the elements under 1983 for a Fifth Amendment taking and whether the taking was done for proprietary reasons or governmental reasons. In my time before the court, I'm going to concentrate on those two topics, 1983 and the proprietary versus governmental functions. First, I'll address the 1983 claim. In Pembar v. the City of Cincinnati, the Supreme Court of the United States told us that a government with a single action, a single decision, can actually violate the 1983 policy provision even with a single act. It doesn't take a written custom. It doesn't take a written policy. It doesn't even take the intent that they would ever do it again. If it's specifically tailored for a certain set of circumstances as it was done in this case, this was tailored specifically for this set of circumstances, then there's liability under 1983 for that policy if it results in an unconstitutional taking. That's what we have here. We have Mayor Annise Parker and City Council were faced with Ella Park coming routinely to City Council and complaining about flooding that had been going on on their property for 20 or 30 years. This was not something that they had addressed in a timely fashion. It turns out that the flooding started when the City of Houston tried to close an unauthorized landfill by using it to dump roadbed materials. They built the property up 8 to 10 feet. The Ella Park residents started to complain. They also started to complain about health issues, by the way. They commissioned a report from the Texas Commission on Environmental Quality, which actually found that the landfill had been capped with 8 to 10 feet of impervious cover, clay, concrete, roadbed materials, et cetera, and that that was actually what was causing the flooding. The City of Houston knew that the decisions it made back in the late 80s and early 90s to cap the landfill with roadbed materials is what led to Ella Park's flooding. Instead of admitting their failure and admitting their fault and correcting the problem that they caused, they went after an individual landowner while he was out of the country and blamed him for causing the very problem that they knew they had caused and they had evidence that they had caused it. What do you do with the district court's opinion that says that plaintiffs allege that the city entered the land without permission and damaged the property, not that the issuance of the injunction in Ella Park's name damaged the property? Well, Your Honor, the injunction was the first step in a scheme. It was the first phase. And so they sue in the name of Ella Park. They get an injunction, a default injunction that was interlocutory. They then take that injunction and assert it as the reason for being able to go onto the property to take the property because in the injunction, in that case, they declared certain properties a public nuisance. So the injunction is a conditioned precedent to take it, to the death? Yes. It's the taking with the full knowledge of all these facts and circumstances that they're not allowed to take. Right. And that's the ratification of the illegal act, which was alleged in our petition. Now, I provided to the court prior to hearing, I'm so sorry, counsel, I forgot to hand this to you, never mind, a chart of our petition that shows the actual facts alleged, where they're alleged in the petition, which starts in the record on page 1774, and which cause of action, whether it goes to 1983 or the proprietary functions or both, so that you can see that these are all intertwined facts. And I think that's what really hurt the presentation of the case at the district court level because on the one hand, the city of Houston claims, and you can look in their motion to abate and the record on page 1634, the very first sentence on the top of page two says, on behalf of Ella Park Terrace, the city of Houston sued Gallegos to get an injunction. And then it also says the injunction gave it, the city of Houston, the authority to go on the property to take it. So everything that the city of Houston has done has been in the shoes of Ella Park Terrace, not as a governmental entity, but representing private interests. Now the claims against Ella Park Terrace are not relevant for this appeal, are they? Other than that they— Frankly, I think Ella Park was pretty much duped. I don't think they knew who owned it. In fact, they kept saying, we're going after the guy that owns it. They're not part of this. No, they're not part of this. It's just the city and the mayor and— Right, right. This is really on the state's 12b6 and 12b1 motions claiming sovereign immunity and a failure to state a claim under 1983. There's three things that I basically need to prove for 1983 Fifth Amendment taking, and that's deprivation of a constitutional right, which is the deprivation of their property, obviously pled, that it was caused by the city of Houston. The city of Houston actually admits that it took the property pursuant to the injunction. And there's three record sites that they— These are judicial admissions and pleadings. Record on appeal at 170, at 185, and then at 1668. So they constantly assert the injunction as the basis for their taking. So you can't separate that from the private nature of this action, which is what leads us to the proprietary function. Is there any— Can the fact that it had a court record, could that cleanse it such, you know, like if an officer does a warrant that's bad, but the court then blesses it, then we— They may not be liable sometimes if they didn't— They're just in the middle of it. Well, what's interesting about that, Your Honor, is when Mr. Gallegos found out about the injunction, because he was never served, never served with the injunction, never had an opportunity to respond, and he challenged it in state court, the city of Houston— the city of Houston's help moved to dismiss the injunction, to dissolve it. So it was, number one, interlocutory, number two, no bond was posted, number three, there was no service, so it's a void order. There is nothing that a void order can do to protect unlawful actions. Now that case, the actual voidness of that injunction is still on appeal in the state court. We have gone already through one round of appeals where it was dismissed because it was interlocutory, because the court refused to rule on any of the voidness issues because she thought it was a final order and that she didn't have plenary power. So we had to take that up, we won that appeal, and now we're back down. When we moved to have it set aside again, Ella Park said, oh, change circumstances, they're just going to condemn the property. Well, the city of Houston has not done anything to condemn the property in all these years. They've made the same claim in this case, in the motion to abate. It's the status of this property, right? Is that in the record? Yes, it is. It's on the motion to abate where the city of Houston represents to the magistrate below that they are going to condemn the easement to the property and that that will offset any damages in this case. So they assert condemnation proceedings as a basis to abate. They still haven't condemned. There's been nothing. How can you do it after the fact? Well, you can do it after the fact if it was an inverse condemnation. But if it was, all right. You actually can go back and condemn it, but what you do, that's the trespass claim. What happens is if a government entity takes the property prior to the declaration of necessity for a public purpose, they can go back and correct that error. The measure of damages is as the property existed prior to the taking. So that the landowner is still made whole, but because it's serving a public purpose, they have the ability to do that. Okay. Well, I don't mean to get you off. So, whatever you want to offer. No problem, Your Honor. So, but in this case, there's been no declaration of public necessity. All the record, the minutes from the city council meeting show that what they did was they looked at alternatives, another factor under 1983. They asked, the city council voted to have the city attorney and public works and engineering devise a plan to cure this problem for Ella Park. It also shows that there were meetings with the landowners, that they discussed it with Mr. Gallegos, and then when he left for Mexico is when they filed the lawsuit against him. So we have this pattern of conduct that is pled with specificity as well as evidence. I mean, we have the minutes of the meetings in our pleadings where city council voted and ratified and directed the employees of the city to participate in this scheme, and they did. Is it normal for the city's lawyers to be involved in subdivision litigation? I've not seen that. It's very rare. There is a provision in the city of Houston codes they assert from time to time that allows the city attorney's office to assist them. I don't think it was applicable in this case. They have not presented any evidence that that was the actual ordinance that they were doing this pursuant to, which only further complicates this issue, and that it was really a proprietary function that they were doing. Should we certify the RIATA claims, the state law claims? If there's . . . Obviously, if we don't think that there's anything to the case, then we wouldn't, for the supplemental claims, we wouldn't go through that probably. Well, I think the 1983 claims stand on their own without the proprietary governmental functions. Now, I wanted to call the court's attention to a case that just came out two weeks ago. It's called OHAH versus LNG Builders. Do you know about this? Huh? Did you share this? Yes, I just did. I found it this . . . In fact, I found it this weekend as I was preparing for oral argument, and it's Lexis 8469, and it's out of Beaumont. Now, it's not final yet. They're still in the stages of rehearing and things like that, but the opinion was issued on November 17th, and I think that's a very interesting case for this court to consider because it's a Texas case that talks about what happens when the city interjects in the litigation between two neighbors that were dealing with drainage issues. While the facts are not, they're clearly distinguishable. This was a case where the city of Houston issued a permit to the developer that bought property next door to a retirement home, and they permitted them to use the city's utility easement to drain their property into the city's storm sewers on the other side of the retirement home, and the court said they couldn't do that. It was a public utility easement. It wasn't for private uses. The developer was a private company, and they clearly separated the public versus private, and they also recognized what happens when the city interjects itself into a purely private matter, and so even though the facts are somewhat distinguishable, the reasoning in that case is very applicable here because what happened here is that the city of Houston, again, interjected itself into what would have otherwise been a private matter, but they had to do it to causing the watershed in the first place, so this was all to avoid their own liability for their own conduct, and that's the other thing that's very, to me, is offensive in this case. They knew they did it, and they fought, and they tried to find a scapegoat to blame, and the other thing . . . Did they need a scapegoat, though, or was it already too late, barred by limitations or something? No, Your Honor. We were not barred by limitations. We filed suit as soon as they took the property, within a year. No, I'm talking about from the prior actions. You know, you said to cover up that they did this thing a long time ago. Were they, they weren't going to get . . . They might not have gotten sued, but they still would have had to correct the problem because if they were the ones culpable as opposed to Mr. Gallegos, then Ella Park could have continued to go to city council and say, you've got to fix this problem you caused. You caused this. Fix our problem, and it never got fixed, and the record shows that Ella Park had been complaining for 20 or 30 years, so that's the other part that makes this a purely proprietary function. If neighbors sue each other, and one of them is draining water onto the other one's property, what happens is they work it out between themselves, and the court can order one of them to remediate. They still have to go get permits and plans and design a drainage system that will work, but the court can order them to do that. That's what happened in this case with City of Houston representing Ella Park. Ella Park, they ordered Mr. Gallegos to fix the problem and to maintain this project. This is not a public project. This is a proprietary function, and so while we recognize that the City of Houston has alleged that under the Texas Court Claims Act, drainage and controlling floodwaters is something that is a governmental function, when you're doing it on behalf of a private citizen, it didn't become a governmental function if Jose Gallegos did it. That wouldn't have been a governmental function, and they've admitted that they're standing in the shoes of Ella Park, so that's not a governmental function. In the case of Wasson that I cite extensively in my brief, Your Honors, do talk about that very issue, and it even related to the city in that case claimed that the governmental function was also a governmental function under the Texas Court Claims Act because it was the City of Jacksonville that made Lake Jacksonville to be their water supply, and what happened in that case was the City of Jacksonville said, we limited this to residential development around our lake because we need to preserve that water supply for our residents, and the Supreme Court of Texas in that case in 2018 said, no, that's not good enough. That's not a governmental function. Even though providing water may be, the fact that you entered into leases with people around the lake, that's a proprietary function. So, in this case, it's not a stretch once they step in the shoes of Ella Park that this is truly a proprietary function, meaning that there is no immunity for the City of Houston in this case. If there are no more questions, Your Honor, I reserve my time for rebuttal. Mr. Hightower. May it please the Court. Let's take a minute to step back and consider what this case is really about. The facts, the operative facts that relate to the claims as pled, the damages as pled are very simple. The City of Houston's Public Works Department is alleged to have gone on to the appellant's property to construct a bourbon swale to avoid or to dissipate a flooding problem that was causing runoff waters to go into people's homes and city streets. Now, appellants want to expand beyond those facts and add a lot of other things to try to support those claims, but that's what the damages that they talk about in the second amendment complaint are all about. As you will see— What if the damages are about a taking of their property? Exactly, Your Honor. That's a taking that came about as a result, according to their complaint, and I'm not saying it's true, but— Which has nothing to do with an injunction. No, it's about taking through the vehicle of the injunction and the fail—they use the injunction to cause them to be able to go, ah-ha, we can take this property now. Your Honor, the injunction has nothing to do with the Public Works Department's efforts to go on to the property and conduct the bourbon swale. The injunction, which is in the record at page 556 through 75— We're not talking about— Never mentions the— Constructing the bourbon swale. We're talking about them taking the property pursuant to the allegation that they had created a nuisance. It's about the nuisance injunction, not about the public works, and that was done by the legal department and the mayor and maybe the city council. Well, it would appear—that might appear to be the case, Your Honor, but it is, in fact, not true. We can't determine—we have to look at the complaint, you know. That's exactly right, Your Honor. That's exactly right, and because they filed all of their constitutional claims under Section 1983, the Monel Factors require that they specifically and discreetly plead a policy, a policymaker, and that that policy be the moving force to their damages. First of all, there are no specific allegations that demonstrate the mayor, the city council enacted a policy to pursue an injunction, but even if you—even if—assuming arguendo it is, that cannot be the moving force—I'm sorry? The magistrate judge found there were allegations and said— There were limited allegations, but that they were not— The magistrate judge said, that's fine. That wasn't why the magistrate judge ruled against the other side. They said that they weren't—didn't create the constitutional problem. Right, they weren't the moving force. Not that the mayor and the city council didn't do the things about the injunction. About the injunction, but what's important here, Your Honor, is, again, the damages that they allege and they're pleading, and you see this at—I'll find it in a second. The damage allegations they talk about are not about the injunction. The injunction itself did not harm them. What harmed them was the city's—they allege—the city's public works department going onto their property, constructing the Berman's Whale in such a way they allege caused them damage. That is wholly different. The only way you can have a policy, a policymaker, and a—that the policy be the moving force for the alleged damages is to pick and choose and borrow from these two entirely unrelated events. The reason why you should specifically review the permanent injunction is it doesn't name the city of Houston anywhere. There are two parties to this permanent injunction. They are appellant Mr. Gallegos and the Ella Park neighborhood. Only Ella Park was empowered to do anything. The city was given no specific authority. The specific city was given no rights under the permanent injunction, and the city has never specifically alleged that the permanent injunction was the basis for the work that public—that the public works department did. But the city's legal team was the driving force of the injunction when they knew, in fact, according to the complaint, that Mr. Gallegos didn't even own the pole property at issue. The city's legal department— They led the process to get the injunction against him and that property when it wasn't even all his property. I'm not sure that I understand your question. The question is that the city is the driving force regardless of whether the city is the party to the injunction or not. So I don't—so does that matter or not? I don't think it matters, Your Honor. Specifically because the—as a matter of record, the injunction has been dissolved. A final order was issued by the state district court. It's now on appeal in Texas state— Are you saying no harm, no foul? I'm saying I'm not sure this court can even review that at this point because it is being—there's a final judgment and that is now on appeal in the state appellate court system. I don't know that this court can even get to that. But even if this court could— Can you explain what you mean? Can you back up? That goes to a part of the Rooker-Feldman doctrine that district courts and federal appellate courts should not be reviewing state court decisions. Obviously, the United States Supreme Court reviewed the process. The state court dissolved the injunction, right? Yes. Got a final judgment and that is what the appellants have now on appeal. To be applicable in the Rooker-Feldman, it has to go against a judgment that's in effect and hasn't been put to one side. So, what judgment would it be going against? Well, I— And to be able to proceed to the next phase in this lawsuit such that the Rooker-Feldman doctrine would have any applicability? Your Honor, I can't begin to defend appellants' arguments against an injunction that doesn't exist anymore. I don't quite understand it, but that's what they have appealed. They've appealed that, not the neighborhood or anyone else. The Rooker-Feldman doctrine does or does not affect this case? You brought it up. I said that it could because I'm not sure that this court has jurisdiction to be able to review a permanent injunction that was dissolved and is now part of a final judgment by a state district court. It's being ruled—it's being reviewed by an intermediate district court. But the appellant's continued referral to that injunction, in fact, represents a collateral attack against the injunction, which really, again, has nothing to do with their 1983 claims. They have to borrow the actions by the mayor or the city council to discuss whether or not the city should assist the neighborhood in the legal lawsuit so that they can then come around and tell you that somehow assisted them in the property. Because what they can't say, Your Honor, is there are no pleadings in this case that show the mayor, the city council, the city attorney's office—they can't really seem to decide which—made an act of the decision that would qualify under the standards announced by this court in Pena v. City of Rio Grande City, that a policy has to be specific and it can't be conclusory. They have to allege specific facts demonstrating the creation of this policy. There is no such policy that relates to the decision for the Public Works Department to go on to their property to construct the Broman Swale, which is the basis of the damages in the lawsuit they pled. Both arguments in our motion to dismiss, the 12b-1 and the 12b-6, are pleadings-based. They relate to the pleadings. They are governed by the pleadings— Your point is essentially a Monell point, that there's a mismatch between satisfying the policymaker's element of Monell and the ultimate damages from the constitutional violation. And that's what the district court said in its order, that arguably there could be a decision by the mayor, by the city council, concerning assisting the neighborhood through the lawsuit, but that doesn't get them the damages to the property that was caused by Public Works Department— That gets them a theory about getting an injunction. It doesn't get them a theory about acting on the injunction. Because the two are totally unrelated. The city isn't mentioned anywhere in the lawsuit. The city isn't mentioned in the permanent injunction. And the city has never claimed that the permanent injunction was the basis or gave them any authority to go in and have the Public Works Department build the Broman Swale. They are totally unrelated. And that's a very, very key point, because it's the only way they can come close to maybe the city attorney's office. We can't really decide from one paragraph to the next. And that's the policy that somehow then led to the Public Works Department going onto the property. It's not there. It's not there. And that's the review of that— Your point is, as to the actual entry onto their property, that was just by the Public Works Department, lower-level people. It was not done at the higher level. Per their complaint, we don't know. We're right. As far as the pleadings are concerned— We don't know. —the decisions were not done by the mayor. I mean, it's not there. And opposing counsel had referenced—I had not seen this demonstrative before oral argument, but what was referenced are allegations within their pleading. I don't—I guess this is maybe an addition to the pleading. It's not clear to me here. But there's no admission that the city was seeking to take a role for—the city was assisting Ella Park, but they were not a party to the lawsuit. Organizations represent other parties in lawsuits all the time. Legal aid does not become a party to a lawsuit because legal aid decides to file a lawsuit on behalf of somebody. I thought there were allegations in the complaint that the mayor and the city council directed Public Works to sort of execute on all these ideas. Well, I think specifically what they said is that Public Works decided to enter onto the property. But again, who at Public Works? Appellants have directed this court to the Pembroke— Is there a point that it's—and there are all these quotes to the press and all— Right. But those aren't policy statements. Those are just comments on, do we like this? Would we like to do that? We think these things are important, but those aren't policy statements. Just so you know, we don't have any demonstrative. I don't have a demonstrative. So, you referred to a demonstrative that you're opposing council and prayer or something. We don't have that. Okay. I apologize. I was referencing this. I don't have that. I thought that she mentioned and she handed it to me as— I'm not— I apologize. I thought she was— I just thought, so we wouldn't be on opposite page. You're talking about something we don't even have. I understand. I understand. What do you do with the fact that the petition, the complaint did say that the Mayor and City Council, through the City Attorney's Office and Public Works, got a scheme to get an injunction based on false information and then use that injunction to enter and modify the properties and that the Public Works engineer said they went into the subject properties with the support and the Mayor and the City Council. There's an awful lot— And that they directed, the City Attorney also directed the Public Works to enter into the subject— There's an awful lot to unpack there, Your Honor. The Mayor and the City Council, I mean, I don't have that particular section in front of me, but did they vote on this? Was this a suggestion? Because one of the things that they do allege is that the Mayor and the City Council voted to have city services come up with options that could lead to a solution. That's not a policy. That's not a directive saying, go do this. Go out and look at things and come back and tell us what you might want to do. It's interesting because they do allege that sometime in 2011, and this is at page 1785 in the record, that the Mayor and City Council rejected a request to go and build a berm on the property. So, I would say, if anything, if you're looking for allegations to specifically speak to the berm, this would go the other way. But there's— Are you saying the Public Works went rogue? I'm sorry, what? What are you saying? Are you saying they went rogue and made the berm without the direction from the City Attorney? What I'm saying, Your Honor, is their pleadings, which is what the Court has to look at when considering the merits of our 12B1 and 12B6 motions, the pleadings do not provide sufficient factual allegations to support the Monel factors, which is why the District Court dismissed all of their constitutional claims, which were brought under Section 1983. The other thing that I want to highlight is appellants seem to be confusing the Monel factors and Section 1983 claims with whether or not actions were governmental versus proprietary, and that's completely apples and oranges. The Government versus Proprietary Act issue comes into play as to whether or not the City enjoys governmental immunity for those actions, which is the 12B6 issue. And again, there's no real discussion to be had. The Texas— All tort claims against the City of Houston are covered by the Texas Tort Claims Act. And it provides— And only— Immunity only exists for cities acting to perform governmental functions. If it's a proprietary function, that immunity is waived. However, the Tort Claims Act provides an enumerated list as Section 101.0215A, and among the items on the enumerated list are specifically sanitary and storm sewers. So you don't have to go any further. You're done. It's on the list. It's clearly governmental. There's no conversation to be had that there are other cases that support this. PKG Contracting Incorporated versus City of Mesquite, Texas Supreme Court case out of 2006 at 197, Southwest heard 388. City of Watauga v. Taylor, Fort Worth Court of Appeals opinion from 1988, 752, Southwest second at 199. There are others specifically talking about how a city enacting flood control, drainage projects for the city, that's clearly a governmental property. But their argument is that it's not a project for the city, that it's benefiting one homeowner versus another homeowner, and therefore proprietary. So it's not a standard flood project. And what's interesting is they've cited no authority for that argument whatsoever. None at all. What about this Beaumont case? Well, it's apparently brand new. I just heard about it today. I have not had a chance to review it. But keep this in mind. We're talking about a flood control project that was performed for a neighborhood concerning a desire to prevent flood water from getting into homes, getting into streets. By their argument, if the city performs flood control work on the west side of Houston, people on the east side of Houston aren't going to be served by that. They don't care. Is that government or propriety? Vice versa. This argument really makes no sense at the end of the day. Because what the city was doing was responding to a neighborhood's request for help. We've had this flooding problem that's been going on for years. Can you do something to help? And so the city investigated it. They tried to help them. And by the way, I want to clear up something. While the city assisted them in initiating the lawsuit that ultimately got that permanent injunction, the city withdrew. The city is no longer providing counsel and has not been providing counsel to them for quite some time. They have private counsel now. And so to say that the city was somehow involved with this all the way through is just actually incorrect. But there's just no authority. I'm not aware of this new case. But until recently, anyway, there was no authority. I was not aware of any that would support this. What do you say about the Riata case? I'm very happy to talk about Riata. Please do. And then also answer whether or not we should certify to the Texas Supreme Court in this case. And that would be the question. Riata simply is a good case and it's good law. It just doesn't apply here. What happened in Riata was the city of Dallas was sued with third-party claims. And before they answered, they immediately filed affirmative counterclaims against the other party in their own name. The city of Dallas sued the other party seeking money damages. And the Court of Appeals said, you forfeit your right to immunity when you affirmatively assert yourself in the case. That clearly doesn't apply here. The city of Houston was never a party and asserted no claims. The issue is whether if they are doing it but through the vehicle of the elk subdivision. The city is directing and driving it all, but it's doing it through this other vehicle. Does Riata apply and extend? I think it clearly doesn't. Because first of all, I would take issue, Your Honor, with the presumption that the city was responding to concerns from a concerned neighborhood. And this was one avenue that they felt like, we can help you. We can give you this legal assistance to obtain some relief. That doesn't make them a party. Other than preparing the paperwork and assisting them like any law firm, legal aid, or any legal aid organization would provide, the city was not a party. The city is not named as a party. The city is never named at all in the permanent injunction. Should we certify or not? I don't think you should, Your Honor, because again, it's an apple and orange comparison here. What Riata talks about is, if you're going to go out and say, hey, you owe me money, then you forfeit your right to immunity if they come back at you. That's just not what happened here. The city asserted no affirmative claims for relief, for money or otherwise, in the city's name, for the city's benefit, against the appellants. That was just LO Park. I see that my time has expired. I would ask that the court please affirm the district court's opinion by dismissing all of the appellant's claims. Thank you. Thank you, Mr. Hattow. Thank you, Your Honors. You have five minutes on rebuttal. I would like to call the court's attention to page 20 of the pleading, the second amended pleading, which is found at page 1793 of the record on appeal. In the very first sentence, this is a letter sent by the city of Houston Public Works and Engineering Department to one of the plaintiffs. The city of Houston has been aware of the stormwater drainage issues related to the former Booker Landfill for a number of years. In 2014, with the support of Mayor Anise Parker and City Council Member Jerry Davis, the city, not just the Public Works Department, the city began a project to resolve the persistent problem of stormwater runoff from the Booker Landfill. The city's own letterhead says the mayor and city council knew and were aware and went in to the project. I would also like to call the court's attention to the Wasson Interests case. That's a 2018 Texas Supreme Court case which I relied on in my brief to discuss the proprietary acts. In that case, there was an allegation that the city of Jacksonville claimed immunity because they had built Lake Jacksonville as the city's water supply. Then when they developed the land around it and limited the use to residential, they got into a dispute with one of their long-term tenants and terminated the lease. That particular individual, that tenant, Wasson Interests, then sued the city of Jacksonville. The Supreme Court, they made a very similar argument and the Court of Appeals bought it. The Court of Appeals said that's related to the enumerated government function in the Texas Tort Claims Act for water supply, drainage, runoff, all of the water issues that are enumerated in the Texas Tort Claims Act. The Texas Supreme Court in 2018 said, but that's not good enough. It's not just that it's enumerated there. If it's done for a proprietary function, if it is a proprietary act, it's still not covered by the Texas Tort Claims Act. The issue was addressed head-on by the Texas Supreme Court in 2018. The Beaumont case cited and followed the Wasson case by applying the proprietary versus governmental function standard in a case, and frankly, in that particular case, that wasn't an enumerated function necessarily that was being alleged. It was the use of a public utility easement, but they still discussed the fact that it's not a public utility. What's really interesting about that was they drew the analogy. If the city of Houston hires a contractor that they completely direct to fulfill a government function, does that governmental contractor have derivative immunity from the government for performing that government function? In that case, they talk about how hard that is for a contractor to retain that immunity because if they have any discretionary acts, immunity is weighed. But isn't the inverse true? If the city steps into the shoes of a private individual and acts for the benefit of a private entity and not for the public at large, don't they then weigh that same sovereign immunity for that discretionary act? The fact that this flooding had gone on for 20 or 30 years before the city of Houston decided to do anything tells you it was discretionary. It also tells you it was only for the benefit of Ella Park. This was not a case and is not a case where the government said, we have an issue with this street flooding and we need to go alleviate it for the benefit of our citizens and as an arm of the state to control flood control. That's not this case. This case is the city of Houston stood in the shoes of a private entity. If there are no more questions, Your Honor, I thank you for your time today. Thank you very much.